## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEMETRIUS HOLLINS,** | § | |
| | § | **Civil Action File No.** |
| **Plaintiff,** | § | |
| | § | **1:21-CV-03756-MHC** |
| **vs.** | § | |
| | § | |
| **GWINNETT COUNTY, GEORGIA;** | § | |
| **CHIEF BUTCH AYERS; SERGEANT** | § | |
| **MICHAEL BONGIOVANNI; and** | § | |
| **OFFICER ROBERT McDONALD,** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANT, OFFICER ROBERT McDONALD'S
### MOTION TO DISMISS COMPLAINT FOR DAMAGES

Now comes the Defendant, Officer Robert McDonald, and files this his Motion to Dismiss Complaint for Damages and incorporated Brief in Support of Motion to Dismiss, and shows to the Court as follows:

### I.      STATEMENT OF THE CASE

Plaintiff, Demetrius Hollins ("Plaintiff) brought the above-styled action against Gwinnett County, Georgia; Chief Butch Ayers; Sergeant Michael Bongiovanni ("Bongiovanni"); and Officer Robert McDonald ("McDonald") in their individual capacities pursuant to 42 U.S.C. § 1983 and 42 U.S.C. 1988.

Specifically, Plaintiff alleges McDonald acted under color of state authority to deprive him of his Fourth Amendment Rights under the Constitution of the United States[1]  Plaintiff also alleges that McDonald committed "excessive use of force" under Georgia law.  All other claims are against the remaining Defendants.  Plaintiff seeks compensatory and punitive damages as well as attorney fees pursuant to U.S.C. § 1988.

## II.   STATEMENT OF FACTS

Plaintiff's case has its genesis in an incident occurring on April 12, 2017, on Sugarloaf Parkway at or near its intersection with Lawrenceville-Suwanee Road, Gwinnett County, Georgia. However, the incident is divided into two separate and distinct interactions with law enforcement. First, Plaintiff was stopped by Defendant, Sergeant Michael Bongiovanni, and a violent fight ensued between the two. Defendant, Officer Robert McDonald, was then dispatched to the scene without having any personal knowledge or observations as to the events that had occurred between Plaintiff and Bongiovanni. The events as personally observed by McDonald appeared to him as follows:

McDonald responded to assist Bongiovanni on a traffic stop.  McDonald heard Bongiovanni transmit radio traffic for a traffic stop.  McDonald thought

---

[1] Complaint for Damages, Count II "42 U.S.C. § 1983 and Georgia Law Excessive Force Claim against Defendants, Bongiovanni and McDonald", ¶¶ 80-89, pp. 17-19.

nothing of it because Bongiovanni's initial radio traffic was routine traffic stop, at Sugarloaf Parkway and Lawrenceville-Suwanee Road.  Shortly after the initial radio traffic, McDonald heard Bongiovanni request for a back-up unit over the radio. Since McDonald was only about a quarter mile away at Lawrenceville Highway and Sugarloaf Parkway, McDonald was dispatched, and he  responded accordingly to dispatch.  Shortly thereafter, McDonald heard Bongiovanni key up on the radio and attempt to say something.  McDonald was unable to understand what Bongiovanni said.  Radio asked Bongiovanni if he was ok and needed a 10-3, which means hold all radio traffic except for that officer on the call.  Bongiovanni did not respond so radio went ahead and gave him a 10-3.   Seconds later, Bongiovanni keyed up on the radio and said that he was in a 29, which is a fight.  When, Bongiovanni said that his voice sounded more strained and heightened than it normally did.  McDonald had worked with Bongiovanni so he could tell how his voice sounds in different situations.  This was the last radio traffic McDonald heard from Bongiovanni. Because there was no more radio traffic, McDonald feared something bad was happening between Bongiovanni and the Plaintiff.

McDonald activated his blue lights and siren and began to maneuver through traffic towards Bongiovanni's location.  McDonald could see the blue lights from Bongiovanni's patrol car further up the road but was unable to see Bongiovanni or the person he was engaged in a fight.  Inasmuch, as traffic on Sugarloaf Parkway

was slow or stopped, McDonald moved to the right shoulder and drove his patrol vehicle down the shoulder and grass. McDonald could still see Bongiovanni's blue lights intermittently through traffic. When McDonald finally got close enough to where the vehicle was stopped, McDonald stopped his vehicle on the right shoulder. Bongiovanni's vehicle stopped in the roadway two lanes over from where McDonald was. McDonald was still unable to see Bongiovanni or the Plaintiff. It was only about one minute or less between the time McDonald cleared on the call and arrived at the scene.

Bongiovanni had given no radio traffic since originally saying he was in a fight and had provided no updates over the radio on the situation. After stopping his vehicle, McDonald exited and drew his pistol. McDonald then ran between cars stopped on the road and ran around the back of Bongiovanni's patrol car. At that point McDonald could see Bongiovanni and the Plaintiff. This was the first time through the whole encounter McDonald could observe or process the situation between the two. McDonald saw the Plaintiff lying on the ground with his upper body turned so he was facing towards McDonald. Bongiovanni was standing next to the Plaintiff with his taser pointed at the Plaintiff. McDonald could see taser wires leading to the Plaintiff. Because of the way the Plaintiff was laying with his stomach facing towards McDonald and the loose sweatshirt he was wearing; McDonald was unable to see Plaintiff's hands. McDonald could not see his hands; McDonald could

not see that the Plaintiff was in handcuffs.  McDonald also could not tell if the taser probes were connected to the Plaintiff's body.

As McDonald was running up, McDonald believed that Bongiovanni had just tased the Plaintiff, causing the Plaintiff to fall to the ground, and was waiting on a backup unit to arrive, approach and handcuff him.  It had been a minute or less since the initial call of the Code 29, so McDonald did not reasonably Bongiovanni had time to gain control of the Plaintiff.  Plaintiff was lying on his side so McDonald anticipated he might attempt to get up and run or continue fighting.  McDonald glanced quickly at Bongiovanni to make sure he did not have visible injuries.  To McDonald he appeared winded and out of breath.  As McDonald was running up, Bongiovanni did not say anything to McDonald and McDonald did not hear any radio traffic from him.  With McDonald's pistol still in his hand, McDonald ran up to Plaintiff.  McDonald did not want to stop, take the time to stop and holster his pistol as there was a real-world possibility that Plaintiff might have a weapon of his own.  Because McDonald's pistol was in his hand, McDonald did not want to reach down and use his hands to gain control of the Plaintiff.  McDonald determined the safest course was to use his foot to push the Plaintiff's right shoulder down so he would be forced flat on the ground, in order to safely could handcuff him.  McDonald raised his foot and by way of forward motion or accident, unintentionally struck Plaintiff's head. Immediately, McDonald realized he had stepped on the Plaintiff's

head instead of shoulder and instantly moved his foot off the Plaintiff.  The Plaintiff then rolled back onto his stomach.  McDonald's intention was not to kick or step on the Plaintiff's head or neck.  McDonald's intention was to use his foot to push the Plaintiff's right shoulder back onto the ground, pin him there, and put him at a position of disadvantage so McDonald could handcuff him. During this portion of the incident McDonald placed his weapon against the person of Plaintiff.

At that moment Bongiovanni was able to tell McDonald that he was" Ok" and the Plaintiff was handcuffed.  McDonald looked down and at that point saw that the Plaintiff was indeed handcuffed.  McDonald did not know at any time until that point that the Plaintiff was in handcuffs.  McDonald then put his knee into the Plaintiff's shoulder to prevent him from continuing to roll around to try to get up, holstered his weapon, while Bongiovanni searched the small of his back for weapons.  After a quick search, Bongiovanni and McDonald immediately stood the Plaintiff up and pinned him against the trunk of his car and conducted a more thorough search.  McDonald held the Plaintiff by his handcuffs and back of his sweatshirt while they searched.  McDonald also, at this time, used his radio to ask to have an ambulance in route to check and make sure the Plaintiff was ok.  McDonald then walked the Plaintiff back to Bongiovanni's patrol car to sit him down.  While walking him back, the Plaintiff asked McDonald if he could ride to jail with McDonald instead of Bongiovanni.  McDonald told the Plaintiff he could not ride with him.  McDonald

had the Plaintiff remove his shoes so McDonald could search them and sat the Plaintiff in the rear of Bongiovanni's patrol car.  This was the end of McDonald's interaction with the Plaintiff.  At the direction of Bongiovanni, McDonald searched the vehicle, obtained the VIN, ran the VIN, and did an impound inventory of the vehicle.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[2]  Dismissal is also proper if the allegations indicate the existence of an affirmative defense or other bar to relief.[3]  "[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations reveal the existence of an affirmative defense, so long as the defense clearly appears on the face of the compliant."[4]

### B.  PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's Complaint, wrought with conclusory contentions, does not comply

---

[2] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[3] *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), adhered to *en banc*, 764 F.2d 1400 (11th Cir. 1985).
[4] *Id.*

with the pleading requirements of the Federal Rules of Civil Procedure.  Indeed, in

the landmark case of *Ashcroft v. Iqbal*,[5] the United States Supreme Court made clear

that:

> The pleading standard Rule 8 announces does not require
> detailed factual allegations, but it demands more than an unadorned,
> the – defendant-unlawfully-harmed-me accusation.  A pleading
> that offers labels and conclusions or a formulaic recitation of the
> elements of a cause of action will not do.  Nor does a complaint
> suffice if it tenders naked assertions devoid of further factual
> enhancement.  To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to state a claim to
> relief that is plausible on its face.  A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a probability requirement,
> but it asks for more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are merely consistent
> with a defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.[6]

Further, the standard for suits against officials in their individual capacity is

even higher.  Plaintiff's suing governmental officials in their individual capacities

must allege specific conduct giving rise to a constitutional violation.[7]  This standard

requires more than conclusory assertions; the plaintiff must allege specific facts

giving rise to a constitutional violation.[8]  Here, Plaintiff's Complaint does purport to

contain any factual allegations against each specific Defendant officer.  However,

---

[5] 556 U.S. 662 (2009).

[6] *Id.* at 678.

[7] *Oliver v. Scott*, 276 F.3d 736, 741 (*5th Cir.* 2002) (*citing Anderson v. Pasadena Indep. Sch. Dist.*184 F.3d 439, 443 (5th Cir. 1999)).

[8] *Id.* (*citing Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

Plaintiff broadly alleges misconduct by the officers but fails to provide sufficient information about McDonald to allow the Court to draw any inferences about McDonald.   Therefore, Plaintiff's Complaint, which contains nothing more than their self-serving, conclusory contentions, fails as a matter of law.

## C. DEFENDANT McDONALD SUED IN HIS INDIVIDUAL CAPACITY, IS ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS

McDonald, sued in his individual capacity, is entitled to qualified immunity and thus, should be dismissed from the instant suit as a matter of law.  The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.[9]  The doctrine protects not only against liability, but the need for government officials to even defend against baseless lawsuits.[10]  "Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.[11]  Qualified immunity is a question of law for the court.  "Because this defense should be resolved at the earliest possible stage of litigation, it is proper for the district court to rule on qualified immunity during a motion to dismiss.[12]

---

[9] *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("We must also keep in mind the fact that '[w]e generally accord . . . official conduct a presumption of legitimacy'.").
[10] *Harlow v. Fitzgerald*,  457 U.S. 800, 812 (1982).
[11] *Redd v. Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citing *Lassiter v. Alabama A&M Univ. Bd. Of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).
[12] *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

Public officials are shielded under qualified immunity so far as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[13]  The qualified immunity analysis consists of a preliminary inquiry plus two steps.  As a preliminary matter, the defendant official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  Once that inquiry is satisfied, the burden shifts to Plaintiff, whose allegations, if true, must establish a constitutional violation.[14]  Plaintiff must do more than refer to general rules and abstract rights to meet his burden.[15]  "Qualified immunity focuses on the actual, specific details of concrete cases."[16]  Only if Plaintiff's rights were violated does the court then proceed to the final step in the qualified immunity determination – whether that right was clearly established.[17]

## 1. *McDonald Acted in His Discretionary Capacity.*

To be eligible for qualified immunity, a government official "must have been

---

[13] *Gonzalez v. Reno,* 325 F3d 1228, 1233 (11th Cir. 2003).

[14] *Harlow*, 457 U.S. at 812.

[15] *Wood v. Kesler,* 323 F.3d 872, 877-78 (11th Circ. 2003); *Hartsfield v. Lemacks,* 50 F.3d 950, 953 (11th Cir. 1995)

[16] *Dorsey v. Wallace*, 134 F.Supp.2d 1364, 1371 (N.D. Ga. 2000, Pannell, J.) (citing *Jones v. Cannon,* 174 F.3d 1271, 1282-83 (11th Cir. 1999)).

[17] *Wood,* 323 F.3d at 877-78; *Hartsfield*, 50 F.3d at 953.

engaged in a 'discretionary function' when he performed the acts of which the Plaintiff complains."[18]   The inquiry is two-fold.   The court asks "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b)  through means that were within his power to utilize.[19]   The allegations of the Plaintiff make clear that Defendant Officers were acting within their discretionary capacity on April 12, 2017 when  Bongiovanni was in the process of "detaining and removing Demetrius Hollins from his automobile."[20]Further, there can be no dispute that McDonald was acting within his discretionary capacity when he was dispatched in a back-up role of a "Code 29".[21] Moreover, it is undisputed that the initial encounter between Plaintiff and Bongiovanni was beyond the ken of McDonald, and he came upon the scene with at best scant knowledge.[22]

## 2.  McDonald Did Not Violate Plaintiff's Constitutional Rights.

Having established that any actions taken by McDonald was clearly within his r discretionary capacity, the burden shifts to Plaintiff to prove that officer violated his constitutional rights.  However, Plaintiff failed to satisfy this burden.

---

[18] *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004) (quoting *Harlow,* 457 U.S. at 818).
[19] *Id.* at 1265-66.
[20] Complaint, ¶¶ 24-33.
[21] Complaint, ¶¶ 34-35.
[22] Complaint ¶¶ 20-41.

The appropriate standard for qualified immunity is not whether there was probable cause for arrest, but whether there was arguable probable cause for the arrest.[23]   The relevant inquiry is whether a reasonable police officer could have believed the actions taken by the officers were lawful, in light of the pre-existing law and the information that the officers possessed at the time of his coming upon the scene.[24]   Law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity.[25]   In *Saucier*, the Supreme Court noted that officers can have reasonable, but mistaken beliefs, as to the facts establishing the existence of probable cause or exigent circumstances.[26]   Further, in evaluating the nature of the force, the court must look at the severity of the crime at issue, whether the Plaintiff poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[27]Consequently, McDonald is  entitled to qualified immunity.

### 3.   *McDonald Did Not Violate Clearly Established Law.*

McDonald also is entitled to qualified immunity as he did not violate clearly established law.  The law must be clearly established in a "particularized sense" for

---

[23] *U.S.C.A. Const.Amend.* 4, 42 U.S.C.A. § 1983.
[24] *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).
[25] *Id.* at 641.
[26] *Saucier v. Katz,* 533 U.S. 194, 206 (2001).
[27] *Graham v. Connor,* 490 U.S. 386, 396 (1989).

the Plaintiff to meet his burden except in the "most obvious" of situations.[28]  This Court has explicitly stated that, with regard to the "clearly established law" analysis, it will only follow Supreme Court, Eleventh Circuit, and State Supreme Court law because "we do not expect public officials to sort out the law of every jurisdiction in the country."[29]  Here, McDonald is entitled to qualified immunity because the law is not clearly established that an officer dispatched to a Code 29 fight call with no other information, faced with a person being placed under an "apparent" lawful arrest who is actively resists arrest, cannot arrest the individual and use the force necessary to effectuate that arrest.  As such, McDonald is entitled to qualified immunity.

## D. PLAINTIFF'S NEBULOUS STATE LAW CLAIMS AGAINST McDONALD MUST BE DISMISSED.

Plaintiff alleges that the conduct alleged constituted "an assault and /or battery", "aggravated assault" or "intentional tort" under Georgia law."[30]  However, Plaintiffs fail to allege that either specific Defendant Officer committed any specific actions that constitute any of the alleged violations.

Additionally, Plaintiff's state law claims must be dismissed because Defendant Officers are entitled to official immunity.  The doctrine of official

---

[28] *Brousseau v. Haugen,* 543 U.S. 194, 199 (2004).
[29] *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1032, n. 10 (11ᵗʰ Cir. 2001) (*en banc*).
[30] Complaint, ¶ 80-83.

immunity offers public officers and employees who are engaged in discretionary acts limited protection from suit in their personal capacity.[31]  In, Georgia, official immunity turns on the type of function the official is engaged in – whether it is a ministerial or a discretionary act.  A ministerial act is one that is simple, absolute, and definite arising under conditions admitted or proved to exist and requiring merely the execution of a specific duty.[32]  By contrast, a discretionary act calls for the exercise of personal judgment including examining the facts, reaching reasoned conclusions, and acting on them in a way that is not specifically directed.[33]

Under Georgia law, an officer:

> may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages, if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[34]

An official function is "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."[35]  Therefore, while an officer may be personally liable if he acts with negligence, actual malice, or intent to injure in the performance of a ministerial duty, an officer may only be liable for

---

[31] *Cameron v. Lang,* 274 Ga. 122, 123 (2001).
[32] *Carter v. Glenn,* 249 Ga. App. 414 (2001).
[33] *Id.* at 416.
[34] O.C.G.A. § 36-33-4 (emphasis added).
[35] *Gilvert v. Richardson,*  264 Ga. 744, 753 (1994).

the performance of a discretionary function if he acts with malice or intent to injure.[36] Actual malice denotes "express malice or malice in fact."[37]  In *Merrow v. Hawkins,* the Georgia Supreme Court distinguished between "malice" and "actual malice," concluding that the requirement that a plaintiff show actual malice "exclude[s] any liability for injuries and damages if officers and employees act with implied malice in the performance of their official functions."[38]

Here, Plaintiff does not contend that any of the Defendant Officers acted with actual malice.  Indeed, while Plaintiff nebulous state law claims that the Defendants subjected Plaintiff to such deprivations by either malice or reckless disregard of Plaintiff's rights,[39] such is insufficient to meet the *actual* malice standard, which requires a showing that that the Defendant officers had an intent to injure Plaintiff. As such, Defendant Officers are entitled to official immunity from Plaintiff's state law claims.

## IV.   CONCLUSION

For the foregoing reasons, McDonald requests that Plaintiff's Complaint be dismissed in its entirety.

---

[36] *Cameron,  at 123.*
[37] *Merrow v. Hawkins,* 266 Ga. 390, 392 (1996).
[38] *Id.*  Although the Court was reviewing liability of state officers and employees under the 1991 Amendment to Art. I, Sec. II, Par. IX, of the Constitution of the State of Georgia, the language limiting a state officer or employees liability who are performance of their official duties to instances in which they act with "actual malice" or with an actual intent to cause injury is similar to O.C.G.A. § 36-33-4.
[39] Complaint, ¶ 80-89.

## **CERTIFICATION**

Counsel for McDonald certifies that this motion and brief has been prepared with Times New Roman 14 point, and also complies with all the requirements of L.R. 5.1.

Respectfully submitted, this 11th day of October 2021.

**CHANDLER, BRITT & JAY, LLC**
**Attorneys for Defendant, Robert**
**McDonald**


**/s/ Walt M. Britt**
_____
**WALT M. BRITT**
**Georgia Bar Number 083237**
**P. O. Box 1749**
**Buford, Georgia 30515**
**(770) 271-2991**
**(770) 271-2986 (fax)**
 **wbritt@cbjblawfirm.com**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEMETRIUS HOLLINS,** | § | |
| | § | **Civil Action File No.** |
| **Plaintiff,** | § | |
| | § | **1:21-CV-03756-MHC** |
| **vs.** | § | |
| | § | |
| **GWINNETT COUNTY, GEORGIA;** | § | |
| **CHIEF BUTCH AYERS; SERGEANT** | § | |
| **MICHAEL BONGIOVANNI; and** | § | |
| **OFFICER ROBERT McDONALD,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>CERFTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2021, I electronically filed a copy of the *DEFENDANT OFFICER ROBERT McDONALD'S MOTION TO DISMISS COMPLAINT FOR DAMAGES* with the Clerk of Court using the CM/ECF system with service on all attorneys of record electronically.

**CHANDLER, BRITT & JAY, LLC**
**Attorneys for Defendant, Robert**
**McDonald**


**/s/ Walt M. Britt**
_____
**WALT M. BRITT**
**Georgia Bar Number 083237**
