IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEMETRIUS HOLLINS,

     Plaintiff,

v.

GWINNETT COUNTY,
GEORGIA; CHIEF BUTCH
AYERS; SERGEANT
MICHAEL BONGIOVANNI,
and; OFFICER ROBERT
MCDONALD

     Defendants.

CIVIL ACTION FILE

NO. 1:21-CV-3756-MHC

## DEFENDANTS GWINNETT COUNTY AND CHIEF BUTCH AYERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

COMES NOW Defendants Gwinnett County and Chief Ayers and, pursuant

to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, files this

memorandum of law in support of their Motion to Dismiss, showing as follows

## INTRODUCTION

On April 12, 2017, Defendant Michael Bongiovanni initiated a routine

traffic stop of Plaintiff's vehicle. Doc. 1 at 2. Defendant Bongiovanni called for

backup, and then, the traffic stop escalated to the point that Defendant

Bongiovanni used force to subdue Plaintiff. Id. Defendant McDonald responded to the call for back up, and upon arriving, struck Plaintiff with his foot. Id. After the incident, Defendants Bongiovanni and McDonald were indicted on multiple counts. Id. at 5. Defendant Bongiovanni entered a plea of no contest, while Defendant McDonald was found guilty by a jury of aggravated assault and battery. Id. at 5–6.

On September 10, 2021, Plaintiff filed suit against Gwinnett County, Georgia; Gwinnett County Police Chief Butch Ayers, Robert McDonald, and Michael Bongiovanni. See Doc. 1. Plaintiff brings claims for: (1) unlawful seizure against Bongiovanni; (2) excessive force against Bongiovanni and McDonald; (3) failure to intervene against Bongiovanni; (4) supervisory liability against Bongiovanni; (5) unconstitutional written use of force policy against Gwinnett County; (6) unconstitutional policies, customs, or practices concerning use of force investigations and officer training against Gwinnett County, Georgia and Chief Ayers; (7) unconstitutional policies, customs, or practices concerning the manipulation of use of force reports against Gwinnett County and Chief Ayers, and; (8) unconstitutional policies, customs, or practices concerning officers' duty to intervene against Gwinnett County, Georgia and Chief Ayers. Id. at 14–55. As

addressed below, Plaintiff's <u>Monell</u> theories of liability (counts 5–8) fail as a matter of law.

**ARGUMENT AND CITATION OF AUTHORITY**

## I.    **Motion to Dismiss Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has provided additional guidance to the Rule 8(a) analysis in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). Pursuant to the Twombly/Iqbal paradigm, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). In ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true. <u>Id.</u> This same tenet is not applicable to legal conclusions however. <u>Id.</u> at 678, 680.

For a claim for relief to be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." <u>Id.</u> at 679. That is, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Id. at 678. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Finally, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## II.   The Gwinnett County Police Department's Written Use of Force Policy was Constitutional

Plaintiff  brings a claim against Gwinnett County for what he alleges was a unconstitutional written use of force policy. Doc. 1 at 23–27. To challenge the constitutionality of the policy on its face, a plaintiff must generally establish that no set of circumstances exists under which the policy would be valid. United States v. Salerno, 481 U.S. 739, 745 (1987). In asserting this claim, Plaintiff makes a variety of arguments as to why the Gwinnett County Police Department's written use of for policy at the time of Plaintiff's arrest was unconstitutional as written. Id.

None of Plaintiff's allegations support a plausible theory of liability, and so, they should be dismissed.

Plaintiff first alleges the GCPD use of force policy is unconstitutional because it allows officers "to use 'lawful force' in the routine course of 'making lawful arrests and searches,' regardless of whether such force is 'necessary.'" Id. at 23. Without additional explanation, Defendants are unsure how Plaintiff construed the Policy's authorization of "lawful force" as a grant to use force regardless of necessity. Black's Law Dictionary defines "lawful" as: "legal; warranted or authorized by the law; having the qualifications prescribed by the law; not contrary to nor forbidden by the law; not illegal." *Lawful*, Black's Law Dictionary, 885 (6th ed. 1990). Merriam-Webster's Dictionary defines "Lawful" as: "being in harmony with the law," or "constituted, authorized, or established by the law."[1] By its very nature, "lawful force" would exclude the type of arbitrary or unnecessary force Plaintiff claims the Policy authorizes.

Plaintiff goes on to allege the GCPD use of force policy "provides blanket authorization to use 'lawful force' when making arrests, without consideration of the severity of the crime, the danger to the officer, the risk of flight, or whether the

---

[1]     Lawful, MERRIAM-WEBSTER'S DICTIONAIRY ONLINE, https://www.merriam-webster.com/dictionary/lawful?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Oct. 29, 2021).

suspect is handcuffed." <u>Id.</u> at 24. However, one page later, Plaintiff cites to a section of the GCPD Policy, which requires officers to determine the appropriate amount and degree of force to use in the course of making searches and arrests by considering the following factors:

1. The nature of the offense

2. The behavior of the subject against whom the force is used

3. Actions by third parties who may be present

4. Physical conditions and tactical considerations

5. The possibility of creating an unreasonable risk of injury or death to innocent persons

6. the feasibility or availability of alternative actions

Doc. 1 at 25. Thus, Plaintiff's own theory of recovery is directly contradicted by his own Complaint. The internally inconsistent allegations doom this theory of <u>Monell</u> liability.

Plaintiff next argues the Policy is unconstitutional because it "makes no reference whatsoever to the *Graham* factors which every officer must consider to determine whether and/or the extent to which physical force is reasonably <u>necessary</u> to make an arrest/search."[2] <u>Id.</u> at 25 (emphasis in original). And instead,

---

[2]     In referring to the "Graham factors" it appears Plaintiff is referencing factors mentioned by the Supreme Court in assessing the reasonableness of force use by

the Policy "provides blanket authorization to officers to use varying degrees of physical force as a matter of routine procedure when making arrests and searches. Id. at 25–26.

As an initial matter, there is no express requirement that a police department written use of force policy explicitly reference the "*Graham* Factors." See Salazar-Limon v. City of Houston, 826 F.3d 272, 279 n. 8 (5th Cir. 2016) (finding a plaintiff's argument that a police department's use of force police was "facially deficient" because it used incorrect language from case law "meritless," as "municipalities are not required to incorporate specific language from [Fifth Circuit] case law, of that of the Supreme Court"); Bogle v. Clackamas Cty., No. 3:15-cv-0013, 2017 WL 5490870, 2017 U.S. Dist. LEXIS 188876, at *53–54 (D. Or. Nov. 15, 2017) ("[i]n order to [pass constitutional muster, a policy need not expressly set out the three-part test from Graham, as [plaintiff] argues."). Even so, in the preceding paragraph of Plaintiff's Complaint, he cites a list of factors which the Policy counsels officers to consider which bears incredible similarity to those espoused in *Graham*, and even goes beyond them. Doc. 1 at 25.

---

law enforcement officers in carrying out arrests and investigatory searches. Graham v. Connor, 490 U.S. 386, 396 (1989). The factors mentioned by the Court include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Next, Plaintiff alleges the GCPD Policy authorizes officers to use "lawful and "necessary" force against "compliant, handcuffed arrestees in response to minor transgressions." Id. at 26. Plaintiff then makes the leap that a reasonable officer reading the Policy would believe they had "blanket authorization" to use whatever force they like as "a matter of routing procedure." Id. at 27. However, the United States Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Terry v. Ohio, 392 U.S. 1, 22–27 (1968)). And so, a written policy authorizing officers to use only "lawful" and "necessary" force is not unconstitutional on its face. In sum, Plaintiff fails to adequately allege GCPD's use of force policy is unconstitutional on its face. Accordingly, Plaintiff's claims should be dismissed.

## III.   Use of Force Investigations

Plaintiff next brings a claim against Gwinnett County and Chief Ayers for an unconstitutional policy, custom, or practice of failing to adequately investigate officers' uses of force. Doc. 1 at 27–44. Plaintiff alleges GCPD policy requires officers to report each use of physical force against an individual regardless of the extent of the force or injury. Id. at 28. The Policy then requires each supervisor in

that officer's chain of command to review and investigate the officer's reported use of force to determine the use is justified and complies with GCPD policy. Id. Plaintiff then makes the blanket assertion that "a significant number of the force incidents described in the UOF Reports . . . presented facts and circumstances which, on their face, established that the use of force was unnecessary and objectively unreasonable." Id. at 29. Plaintiff contends that because "a significant number" of these reports contained "clearly contradictory facts" such that "every reasonable officer" would have conducted further inquiry. Id. at 29. Plaintiff asserts that Chief Ayers and other (unidentified) supervisors reviewed and approved each of these use of force reports without making any findings, or recommending any discipline. Id. at 29–30. As support for these blanket assertions, Plaintiff points to 60 use of force reports from the 20-year career of Officer Bongiovanni, which Plaintiff alleges Chief Ayers "rubber stamped" in approving them. Id. Plaintiff cites eleven use of force reports which he contends "lacked sufficient information" to allow any reasonable officer to determine that the use of force was "objectively reasonable and justified, including but not limited to the surrounding circumstances and interaction with the arrestee before using force, the severity of the crime, and/or whether there existed a sufficient threat which necessitated the use of force." Id. at 30. For most of the eleven use of force reports

cited by Plaintiff, he simply cites some language showing Officer Bongiovanni used force, and then notes that the review of the incident closed without "further inquiry or discipline." Id. at 31–36. It seems then that Plaintiff's claim is that Officer Bongiovanni's use of force reports did not contain enough information to justify the use of force, but despite this, no further inquiry was conducted by supervisors, which amounts to some form of unconstitutional policy that caused Plaintiff's injury. Essentially, supervisors failed to investigate, because they should have inquired further when presented with faulty use of force reports.

Plaintiff's claims as plead are problematic for a number of reasons, which should ultimately result in their dismissal. As an initial matter, Plaintiff's failure to investigate claims are all premised on Plaintiff's own notion that use of force investigations are confined only to the evidence contained in a single narrative description, which asks only for the officer to describe the force. For instance, in regard to Case No. 16C-031, Plaintiff takes issue that the Report did not include Officer Bongiovanni's basis for making a traffic stop. Id. at 31. In concluding the incident was inadequately documented, and thus inadequately investigated, Plaintiff requires us to assume no police report existed that would contain the basis for the stop, and that supervisors did not review said report. Put differently, Plaintiff—without any supporting factual allegations—determined the scope of a

supervisors' review, decided supervisors only read a single document, and then conclude that document is inadequate. Suffice to say, the Court should not allow Plaintiff to both define the scope of the investigation, then allege the scope—which it determined—is inadequate.

Beyond Plaintiff's faulty premise, there are serious causation issues. Plaintiff alleges Chief Ayers' rubber stamping of excessive force incidents, emboldened Officers McDonald and Bongiovanni to use excessive force on him. Id. at 38. For this to be true, we must assume the incidents cited by Plaintiff involved the use of unconstitutional excessive force. Other court faced with similar allegations have held that "accusations, without an outcome substantiating unconstitutional conduct, [are] of no relevance for establishing the existence of a policy, custom, or pattern of unlawful conduct." Arrindel-Martin v. City of Syracuse, 5:18-cv-780, 2018 WL 6622193, 2018 U.S. Dist. LEXIS 212597, at 18–19 (N.D.N.Y. Dec. 18, 2018); see also  Esperanza v. City of New York, 325 F. Supp. 3d 288, 309 (E.D.N.Y. 2018) ("'Plaintiffs seem to proceed on the assumption that if a complaint . . . is filed against an officer, it follows ipso facto that he is guilty of a constitutional violation, a proposition [this Court] cannot accept.'") (alterations in original). However, in those cases, the courts rejected unsubstantiated citizen complaints and unresolved lawsuits. Id. Here however, Plaintiff bases his claims on self-reported uses of force

authored by Officer Bongiovanni, and he has not included facts showing any of the cited incidents resulted in citizen complaints or lawsuits. For Plaintiff's claim—that failing to investigate prior instances of excessive force emboldened Officers Bongiovanni and McDonald to use excessive force against him—to be plausible, he must first give *some indicia* the incidents not investigated were unconstitutional, but he has not. See also Hill v. City of Atlanta, No. 1:15-cv-1421, 2016 WL 11586947, 2016 U.S. Dist. LEXIS 196733, at *44 (N.D. Ga. Mar. 29, 2016) (dismissing a plaintiff's *Monell* claim for failure to investigate excessive force and defective investigative reports because the plaintiff's complaint failed to allege specific facts showing city officials were aware of past misconduct as "[t]here ha[d] been no showing of prior complaints or lawsuits against [the city] for [that] type of custom or policy.").

As stated above, Plaintiff claims supervisors failed to investigate misconduct because they failed to inquire further where a use of force report provided "inadequate" details. However, in doing so, Plaintiff ask the Court to implausibly assume—with no specific supporting facts— supervisors' reviews were limited to a single text box on a form. From there, Plaintiff alleges the insufficient prior investigations into excessive force cause Officers McDonald and Bongiovanni to use excessive force against him. However, in reaching that conclusion, Plaintiff

asks the Court to infer prior excessive force was used, despite the lack of any citizens' complaints, lawsuits, or other indicia that the force described in the use of force reports was unjustified. In stating a claim for relief, Plaintiff has failed to include "well-pleaded facts" that would "permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 678

## IV.    Manipulation of Use of Force Reports

Plaintiff next alleges Defendants Gwinnett County and Chief Ayers had an unconstitutional policy, custom, or practice of manipulating use of force reports to avoid discipline and accountability. Doc. 1 at 44. Plaintiff alleges the existence of a widespread and persistent practice of report manipulation by citing two alleged instances. Id. at 44–50. First, Plaintiff alleges two citizens lodged citizens' complaints related to Plaintiff's arrest, but the GCPD officer who received the complaints entered the wrong computer code indicating that no report was requested. However, this single instance occuring after Plaintiff's alleged injury does nothing to support the claim that Officers McDonald and Bongiovanni—at the time of the incident—believed a municipal custom allowed them to violate Plaintiff's rights with impunity. Shehada v. Tavss, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013); see Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999) (finding, in a claim for failure to investigate, an inadequate investigation of the

subject incident did nothing to show the existence of any policy or custom that existed at the time of the subject incident, or that could have caused it); see also Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009) (stating in a failure-to-discipline case that "basic princip[les] of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation.").

Aside from allegations related to the subject incident, Plaintiff cites only one other instance of supposed report manipulation. Doc. 1 at 47–48. To impose Monell liability, a plaintiff must establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice. Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).  When attempting to state a Monell claim based on custom or practice, "[a] pattern of similar constitutional violations . . . is ordinarily necessary, because a single violation is not so pervasive as to amount to a custom." Gurrera v. Palm Beach Cty. Sheriff's Office, 657 F. App'x 886, 892–93 (11th Cir. 2016) (citing Craig v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011) and Grech v. Clayton Cty., 335 F.3d 1326, 1330 (11th Cir. 2003)). In the instant case, Plaintiff's one alleged instance of report manipulation—occurring before the subject incident— fails to state a claim that a wide-spread and persistent custom or practice existed, or

that said practice was the moving-force behind his injuries.[3] See Daniel v. Hancock Cty. Sch. Dist., 626 F. App'x 825, 832 (11th Cir. 2015) (affirming defendant's motion to dismiss where plaintiff premised policy or custom upon a single instance of officer misconduct); Diaz v. Miami-Dade Cty., 424 F. Supp. 3d 1345, 1362–63 (S.D. Fla. 2019) (dismissing a plaintiff's Monell claim—based upon one alleged instance of false arrest—for failure to state a claim); Prieto v. Metro. Dade Cty., 718 F. Supp. 934, 938–39 (S.D. Fla. 1989) (stating that "four isolated incidents involving only [the plaintiff] fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom"). Accordingly, the Court should dismiss Plaintiff's claims for report manipulation against Defendants Gwinnett County and Chief Ayers.[4]

---

[3]     In addition to failing to sufficiently allege the very existence of a policy or custom, Plaintiff fails to allege actions which would put supervisory officials (Chief Ayers or Gwinnett County officials) on notice of the need to correct alleged violations. "[D]eprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated incidents. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). As stated above, Plaintiff alleges only a single isolated incident. Doc. 1 at 46. Even so, Plaintiff alleges only that Chief Ayers reviewed the allegedly manipulated report. Id. at 47–48. Plaintiff does not allege Chief Ayers actually knew the report was manipulated, or that said manipulation was so "obvious, flagrant, or rampant" that Defendant Ayers should have known. Brown, 906 F.2d at 671.

[4]     In the section of Plaintiff's Complaint concerning the alleged manipulation of use of force reports, Plaintiff appears to make some additional argument related

## V.  <u>Duty to Intervene</u>

Next, Plaintiff brings several different claims for unconstitutional customs, policies, and practices under the umbrella of officers' failure to intervene. Doc. 1 at 50–53. First, Plaintiff alleges widespread practice of officers failing to intervene in a fellow officer's use of excessive force and that the Gwinnett County Police Department failed to investigate, discipline, counsel, or train officers regarding their failure to intervene. <u>Id.</u> In support of these claims, Plaintiff alleges only that officers failed to intervene "[a]s a matter of widespread and persistent pattern and practice," and "in the large majority of Bongiovanni's 60+ prior use of force incidents . . . one or more officers was present and in a position to intervene but did not do so." <u>Id.</u> at 51. With regard to the failure to investigate, Plaintiff alleges only that other officers helped cover up uses of force, or "[o]n reasonable information and belief, GCPD has not investigated . . . a single officer for failing to intervene . . . in the 20 years preceding the subject incident." <u>Id.</u> at 51–52.

For a claim for relief to be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." <u>Iqbal</u>, 556 U.S. at 679. A plaintiff's pleading obligation "requires

---

to the "Training Section Director" and the "Office of Professional Standards." Doc. 1 at 49–50. It is difficult for Defendants to adequately respond to said allegations without additional details or other factual support. Defendants ask that the Court require a more definite statement as to these allegations.

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Plaintiff's allegations regarding officers' failure to intervene are nothing more than naked assertions devoid of any factual support. Because Plaintiff fails to adequately plead a claim for relief, the Court should dismiss Plaintiff's claims based upon failure to intervene, or failure to investigate non-intervention.

Next, Plaintiff alleges GCPD's written policy manual is unconstitutionally deficient because it contains no protocols instructing officers to intervene. Doc. 1 at 52. In assessing municipal liability, a failure-to-promulgate-policy claim is treated like a failure-to-train claim. Race v. Bradford Cty., 2019 U.S. Dist. LEXIS 224213, at *43 (M.D. Fla. Aug. 20, 2019) (citing Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) and Long v. Cty. of Los Angeles, 442 F.3d 1178, 1189 (9th Cir. 2006)). "In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). But "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference

for purposes of failure to train." Id. at 61–62 (quotation marks omitted). As stated above, Plaintiff's allegation regarding the failure to intervene are nothing more than conclusory accusations that officers were routinely failed to intervene. Doc. 1 at 51. The only specific instance of non-intervention cited by Plaintiff is his own, id. at 11–12, which is insufficient to show a "pattern" of similar constitutional violations. Connick, 563 U.S. at 61–62; Craig v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." (quotation omitted)).

Of course, in certain situations, evidence of previous incidents is not required to establish city policy if the need to train and supervise in a particular area is "so obvious" that liability attaches for a single incident. Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 390 n. 10 (1989)). However, where the proper course of action is unmistakable even to those without training, "then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (quoting Walker v. City of New York, 974 F.2d 293, 299–300 (2d Cir. 1992)). As an example of this principle, envision a police policy with provisions on the use

deadly force against suspects, but with no policy forbidding officers from wildly firing their service weapons into the air. If an officer fired into the air on a whim, and that falling round struck a civilian, the city should not be held liable for its silence on a prohibiting policy, because any person—trained or untrained—would know of the danger of such actions. And so, the need to counsel against them was not "so likely" that failure to do so is deliberate indifference. Courts analyzing the absence of a duty to intervene policy have found such a policy is not so obviously necessary that the failure to implement one constitutes deliberate indifference, because intervention against constitutional violations is common sense. See Parker v. Mo. City, No. 4:12-cv-2484, 2015 WL 4431019, 2015 U.S. Dist. LEXIS 93040, at *37 (S.D. Tex. Jul. 17, 2015) ("As for the absence of an intervention policy, the Court agrees with Missouri City that not only does the Use of Force policy imply a duty on the part of police to stop an officer from applying excessive force where the circumstances do not warrant it, but common sense and a reasonable policeman's sense of duty would require it; an express policy is not necessary."); see also Witt v. City of Vineland, No. 20-14678, 2021 WL 3465597, 2021 U.S. Dist. LEXIS 147780, at *24 (D.N.J. Aug. 6, 2021) ("It is not patently obvious that untrained correction officers will fail to intervene to stop excessive force against a pretrial detainee, given the reasonable opportunity to do so. One would expect that

many individuals would naturally be inclined to intervene in an unjustified beating, regardless of the fact that the victim is a pretrial detainee accused of a crime."). The duty to intervene is common sense, and so, the need to include such a policy is not so obviously necessary that the GCPD's failure to do so amounts to deliberate indifference.    Because Plaintiff has not sufficiently alleged a pattern of constitutional violations caused by the lack of a policy, nor that the need for such a policy is so obvious that deliberate indifference may be inferred from his own incident, the Court should dismiss Plaintiff's failure to promulgate claims.

Finally, Plaintiff alleges GCPD's policy of having officers prepare Use of Force Reports related to their own conduct somehow tells officers not to concern themselves with the actions of other officers, which causes officers not to intervene. Doc. 1 at 52. Plaintiff's argument strains plausibility. First, Plaintiff makes that conclusory assertion that the GCPD policy requiring officers to document their own use of force naturally excludes any reference to another officer's involvement. Id. Which, according to Plaintiff's logic, makes officers apathetic towards other officers' uses of force, which in turn, leads officers not to intervene. Plaintiff's allegations are inferences based upon inferences, which are beyond the reasonable inference pleading standard allowed under Iqbal. 556 U.S. at 678. Accordingly, Plaintiff's claims should be dismissed.

## VI.        <u>Punitive Damages</u>

Plaintiff alleges, in a rather unadorned manner, that he is entitled to punitive damages from "Defendants." Doc. 1 at 53–54. It is well established that Gwinnett County, as a governmental entity, is immune from punitive damages. <u>Newport v. Fact Concerts</u>, 453 U.S. 247, 260 n. 21 (1981).

## <u>CONCLUSION</u>

Based upon the foregoing, Gwinnett County and Chief Ayers respectfully request that the Court grant their Motion to Dismiss.

Respectfully submitted this 29th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Preston W. Ehlers*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com
Preston W. Ehlers
Georgia Bar No. 532876
Preston.Ehlers@fmglaw.com

*Counsel for Defendants Gwinnett County and Chief Butch Ayers*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
Telephone: (770) 818-0000
Facsimile: (770) 937-9960

Tuwanda Rush Williams
Deputy County Attorney
Georgia Bar No. 619545
Tuwanda.williams@gwinnettcounty.com

*Co-counsel for Defendants Gwinnett County
and Chief Butch Ayers*

Gwinnett County Department of Law
75 Langley Drive
Lawrenceville, Georgia 30046
(770) 822-8700

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing memorandum has been prepared in compliance with Local Rule 5.1(B) using Times New Roman 14-point font.

Respectfully submitted this 29th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Preston W. Ehlers*
Preston W. Ehlers
Georgia Bar No. 532876
Preston.Ehlers@fmglaw.com

*Counsel for Defendants Gwinnett County and Chief Butch Ayers*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
Telephone: (770) 818-0000
Facsimile: (770) 937-9960

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS GWINNETT COUNTY AND CHIEF BUTCH AYERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants:

L. Chris Stewart
Justin D. Miller
Dianna J. Lee
STEWART MILLER SIMMONS
55 Ivan Allen Jr. Blvd
Suite 700
Atlanta, Georgia 30308
404-529-3476

This 29th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Preston W. Ehlers*
Preston W. Ehlers
Georgia Bar No. 532876
Preston.Ehlers@fmglaw.com

*Counsel for Defendants Gwinnett County and Chief Butch Ayers*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
Telephone: (770) 818-0000
Facsimile: (770) 937-9960